IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEVIN HOLOHAN**, *et al.*, : | |
| : | |
| Plaintiffs, : | CIVIL ACTION |
| : | |
| v. : | NO. 20-5903 |
| : | |
| **MID-CENTURY INSURANCE** : | |
| **COMPANY**, *et al.*, : | |
| : | |
| Defendants. : | |

## MEMORANDUM

**TUCKER, J.**                                                                                       September **27th**, 2021

      Presently before the Court are Defendants' Motion to Dismiss Counts II, III, VII, VIII, Dismiss All Claims against Defendants Harman and Eckles, and Motion to Strike (ECF No. 5), Plaintiffs' Response in Opposition (ECF No. 12), Defendants' Reply in Support (ECF No. 14-1), Plaintiffs' Motion to Remand (ECF No. 10), Plaintiffs' Amended Memorandum in Support of Motion to Remand (ECF No. 11), and Defendants' Response in Opposition (ECF No. 15).

      Upon careful consideration of the Parties' submissions, and for the reasons set forth below, Plaintiff's Motion to Remand (ECF No. 10) is **DENIED**. Defendants' Motion is **GRANTED IN PART**. Plaintiff's claims against Defendants Timothy Harman and Patrick Eckles under Counts I, II, III, and VIII are **DISMISSED WITH PREJUDICE**. Counts III and VIII related to violations of the UTPCPL are **DISMISSED WITHOUT PREJUDICE**. Defendants' Motion to Strike is **DENIED**. Plaintiffs' Counts II and VII for statutory bad faith remain as to Defendant Mid-Century Insurance Company. Because Defendants did not move to dismiss Counts I, IV, V, and VI, they remain to be litigated.

1

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

On September 9, 2015 and August 18, 2016, Plaintiff Kevin Holohan, was involved in two (2) separate motor vehicle collisions. He and his wife, Plaintiff Kathya Holohan, were covered by a personal auto policy issued by Defendant Mid-Century Insurance Company ("Mid-Century") at all material times. The policy provided coverage in accordance with the requirements of the Pennsylvania Motor Vehicle Responsibility Law, 75 Pa.C.S.A. §1701 et seq. As a result of the September 9, 2015 collision, Mr. Holohan sustained numerous injuries including: cervical disc abnormality at C4-C5, C5-C6 and C6- C7 with neural foraminal involvement and disc osteophyte; occipital neuralgia; cervicalgia; cervical facet syndrome; cervical radiculitis; cervicothoracic sprain and strain with segmental dysfunction; headaches; pain and numbness in the right upper extremity. Plaintiff also suffered injury and/or aggravation of injury to his neck, back, shoulders and upper extremities. Pl. Compl. 4.

Following a spinal specialist visit and diagnosis, he submitted a claim to Mid-Century for first party medical benefits. Mid-Century began making payments for his treatment, including: physical therapy; diagnostic testing consisting of numerous MRIs, CT scans and EMGs; pain management; medication therapy; acupuncture; injection therapy, including suboccipital nerve blocks, sphenopalantine blocks, cervical trigger point injections, epidural steroid injections and facet injections; and attempted surgical intervention in the form of a cervical radiofrequency ablation which was aborted mid-procedure due to the inability to isolate the nerves. Pl. Compl. 4-6, Pl. Am. Mem. in Support 1.

Following the second collision on August 18, 2016 in which Plaintiff's injuries were exacerbated, the Mid-Century administratively closed Mr. Holohan's first party medical benefits claim relating to the first accident. Pl. Am. Mem. in Support 2. Defendants used the Peer

Review process[1] to obtain a determination that Kevin Holohan's treatment was not related to the August 18, 2016 collision but, rather the September 9, 2015 collision which the Defendants had administratively closed. Pl. Am. Mem. in Support 2. Defendants refused to pay for the treatment under the first claim despite more than $80,000.00 of first party medical benefits available. Pl. Am. Mem. in Support 2. After the second collision, Plaintiff filed an underinsured motorist ("UIM") claim arising from the initial September 9, 2015 collision. Despite having determined that Mr. Holohan's injuries and treatment were related to the September 9, 2015 collision and that the August 18, 2016 collision aggravated his symptoms, Defendants still refused to pay Plaintiffs UIM benefits. Mot. to Remand 3.

On October 20, 2020, Plaintiffs initiated a lawsuit against Defendants Mid-Century Insurance Company, Patrick Eckles, and Timothy Harman in the Pennsylvania Court of Common Pleas for Philadelphia County, No. 201001445 ("the State Court Action"). They raised eight causes of action arising from Defendants handling of Plaintiffs' first party medical benefits and UIM benefits stemming from the two motor vehicle collisions:

(1) Breach of Contract relative to the September 9, 2015 Underinsured Motorist Benefits pled against Defendants Mid-Century Insurance Company and Timothy Harman;
(2) Common Law and Statutory Bad Faith relative to the September 9, 2015 Underinsured Motorist Claim pled against all Defendants;
(3) Timothy Harman's Violation of Consumer Protection Law pled against all Defendants;
(4) Breach of Contract relative to First Party Medical Benefits pled against Mid-Century Insurance Company;
(5) Violation of 75 Pa.C.S.A § 1716/1798 relative to the September 9, 2015 Collision pled against Mid-Century Insurance Company;
(6) Violation of 75 Pa.C.S.A. § 1797 relative to the September 9, 2015 Collision pled against Mid-Century Insurance Company;
(7) Common Law and Statutory Bad Faith relative to the First Party Medical Benefits Claims pled against Mid-Century Insurance Company; and

---

[1] In Pennsylvania, a Peer Review is utilized to challenge the reasonableness and necessity of treatment, but not to determine causation. *See* 75 Pa.C.S.A. § 1797. The MVFRL provides that the exclusive mechanism for an insurer to challenge the causal connection between a collision and resulting medical treatment is an independent medical examination ("IME"). *See* 75 Pa.C.S.A. § 1796.

(8) Patrick Eckles' Violation of Consumer Protection Law pled against all Defendants.

On November 24, 2020, Defendants removed the action to federal court on the basis of diversity jurisdiction, claiming that Defendant Timothy Harman, a citizen and resident of the Commonwealth of Pennsylvania, was fraudulently joined solely for the purpose of destroying diversity jurisdiction.  Plaintiffs are citizens and residents of Pennsylvania.  Mid-Century Insurance Company's corporate headquarters is located at 6301 Owensmouth Ave., Woodland Hills, California 91367.  Defendant Patrick Eckles is a citizen and resident of New Jersey, and Defendant Timothy Harman is a citizen and resident of Pennsylvania.  Pl. Compl. 2-3.

Plaintiffs seek: (1) Contractual underinsured motorist benefits; (2) Bad faith damages for bad faith handling, adjusting and evaluating Plaintiffs' underinsured motorist claims; (3) Damages for the violations of the terms and provisions of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., by Defendant Timothy Harman; (4) Contractual first party medical benefits; (5) Damages pursuant to 75 Pa.C.S.A. §§ 1716 & 1789; (6) Damages pursuant to 75 Pa.C.S.A. § 1797; (7) Bad faith damages for the bad faith handling, adjusting and evaluating of Mr. Holohan's first party medical benefits claims; and (8) Damages for the violations of the terms and provisions of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., by Defendant Patrick Eckles.

## II. LEGAL STANDARD

### A. Diversity Jurisdiction & Joinder

Pursuant to 28 U.S.C. § 1332(a)(1), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states."  As defined in 28 U.S.C. § 1332(c), "[f]or the purposes of this section and section 1441 of this title [28 USCS § 1441]—(1)

a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business…" Moreover, 28 U.S.C. § 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 USCS § 1332(a)] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Therefore, in order for the state court action to be properly removed, (1) it must be between citizens of different states, (2) defendant must not be a citizen of Pennsylvania, and (3) the amount in controversy must exceed $75,000.

Under the fraudulent joinder doctrine, a defendant may still remove an action if it can establish that the non-diverse defendants were "fraudulently" named or joined solely to defeat diversity jurisdiction. *In Re Briscoe*, 448 F.3d 201, 215-16 (3d Cir. 2006).  Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) quoting *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990).  The objective test for fraudulent joinder is whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant" and requires consideration of whether the plaintiffs "fail[] to state a cause of action ... and the failure is obvious according to the settled rules of the state." *Id.* at 111-12 (quoting 1A *Moore's Federal Practice* ¶ 0.161 [2]).  The Third Circuit has emphasized that this inquiry is *not* coextensive like the inquiry required for a 12(b)(6) motion to dismiss. (emphasis in original) *Lopez v. Home Depot, Inc.*, No. CIV. A. 08-1020, 2008 WL 2856393, at *2 (E.D. Pa. July 22, 2008).  "'Fraudulent joinder' is a term of art—a demonstration of outright fraud or bad faith is not necessary to render a party fraudulently joined." *Id*. If the

court determines that joinder was "fraudulent" in line with this standard, it can disregard the citizenship of non-diverse defendants for jurisdictional purposes, dismiss those defendants, and retain jurisdiction. *In re Briscoe*, 448 F.3d at 216.

**B. Motion to Dismiss**

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Id.* at 234 (quoting *Twombly*, 550 U.S. at 556).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit set forth a three-part test that district courts must apply when evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010). A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If the complaint fails to do so, the motion to dismiss will be granted.

**III.    DISCUSSION**

   **A. Motion to Remand**

<u>*The "Fraudulent Joinder" of Defendant Harman Renders the Claims against Him Dismissible and the Diversity of Remaining Parties Gives This Court Jurisdiction*</u>

      Plaintiffs have pled three causes of action against Defendant Harman: Count I - Breach of Contract; Count II - Common Law and Statutory Bad Faith; and Count III - Violation of Consumer Protection Law.  Plaintiffs have no plausible claim against Defendant Harman for breach of contract because, while insurance adjusters have a duty to their principals and should conduct investigations with propriety, this duty does not create a contractual obligation between the adjuster and the insured.  *See Reto v. Liberty Mut. Ins.*, No. CIV. A. 18-2483, 2018 WL 3752988, at *2 (E.D. Pa. Aug. 8, 2018) ("In a breach of contract action, only the principal, Liberty Mutual, may be held liable. Thus, there is no colorable ground supporting the [plaintiff's] claim of breach of contract against [the claims representative]."); *see also Murphy v. United Fin. Cas. Co.*, No. CIV. A. 15-4199, 2015 WL 12834347, at *2 (E.D. Pa. Sept. 17, 2015); *Hudock v. Donegal Mut. Ins. Co.*, 264 A.2d 668 (Pa. 1970).

      Plaintiff alleges that Defendant Harman engaged in a scheme to defraud them of their benefits but fails to allege the specific facts necessary to support this claim. *See Hennessy v. Allstate Ins. Co.*, No. CIV.A. 13-6594, 2014 WL 1479127, at *2 (E.D. Pa. Apr. 14, 2014) (where individual insurance agents and claims representatives were **not** fraudulently joined when "[t]he complaint ple[d] many specific factual allegations against the individual defendants, and attache[d] twenty documents either authored or received by them as exhibits." Including an allegation in the complaint that Mr. Ricci "created a likelihood of confusion and misunderstanding" by "unfairly, fraudulently, and deceptively" telling the Plaintiff and his family that certain policy provisions applied to them). But here, unlike the defendants in

7

*Hennessy*, we do not have specific and well-pled allegations of personal misconduct and fraudulent representations on the part of Timothy Harman or Patrick Eckles.

Plaintiffs have no plausible claim against Defendant Harman for statutory bad faith because such claims have been found impermissible under § 8371. *See Reto*, 2018 WL 3752988, at *2 ("[The claims representative] is not an insurer because she is not a party to the insurance contract .... Accordingly, there is no basis for a bad faith claim"); see also *Dresdner v. State Farm Mut. Auto. Ins. Co. and First Name Unknown Claims Person Fitzsimmons*, No. CIV. A. 95-4305, 1995 WL 468427 (ED. Pa. Aug. 8, 1995) ("Bad faith claims against insurance agents, claim representatives, peer review organizations and peer review physicians have been found to be impermissible under § 8371.").

Similarly, Plaintiffs fail to make a plausible claim against Defendant Harman for common law bad faith because Pennsylvania law does not support a bad faith claims against a claim adjuster. *See, e.g., Peer v. Minnesota Mut. Fire & Casualty Co.*, No. CIV. A. 93-2338, 1993 WL 533283, at *3 (E.D. Pa. Dec. 23, 1993) (denying motion to remand because Pennsylvania courts would not permit an insured to bring a tort claim for an alleged breach of the duty of good faith and fair dealing to recover punitive damages against an adjuster); *Mattei v. Liberty Mut. Ins. Corp.*, No. CIV. A. 18-4643, 2019 WL 78957, at *3 (E.D. Pa. Jan. 2, 2019) (denying remand and holding plaintiff could not state a common law bad faith claim against insurance adjuster under Pennsylvania law based on the facts at issue).

As for Defendant Harman's alleged violations of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. ("UTPCPL"), "[i]n Pennsylvania, only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL] and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the

failure to perform a contractual duty, is not actionable." *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon v. Pa. Blue Shield*, 548 A.2d 600, 604 (Pa. Super. 1988)); *see Filippello v. Transamerica Premier Life Ins. Co.*, No. CIV. A. 17-5743, 2018 WL 451639, at *1 (E.D. Pa. Jan. 16, 2018) (denying remand, dismissing claims against insurance adjusters based on fraudulent joinder, and holding "[t]here is no possibility that 'a state court would find that the complaint states a cause of action' for a UTPCPL violation against the non-diverse Defendants…"); *See also Nordi v. Keystone Health Plan West*, 989 A.2d 376, 385 (Pa. Super. 2010); *Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564 (E.D. Pa. 2016). There was no contractual obligation between Plaintiffs and the Individual Defendants so there could be no malfeasance on Defendant Harman's part.

Plaintiffs failed to plead factual allegations that establish they believed any misrepresentation made by Defendant Harman, that they justifiably relied upon any misrepresentation by Harman, or that they suffered any form of harm based on their reliance of any misrepresentation by Harman. Instead they allege Harman "fail[ed] to review and evaluate the injuries and damages of the plaintiff," "attempt[ed] to utilize the August 18, 2016 collision to limit and deny benefits, despite obtaining and relying upon medical reports that establish the injuries and damages of [Plaintiff] are related to the September 9, 2015 collision," "made no offers of settlement," and "ignored evidence favorable to [Plaintiff]" in order to limit and deny benefits due and owing to Plaintiffs. Pl. Compl. ¶¶ 115-122. Harman acted in the course and scope of his employment at all times and there is no allegation that he issued the insurance policy or personally agreed to pay the UIM claim. He was not Plaintiff's insurance broker. The UTPCPL's "catchall provision" was designed to be construed liberally and create a cause of action for plaintiffs defrauded of benefits by insurance providers. In this instance, while the

UTPCPL's "catchall provision" applies to Mid-Century, it cannot be extended to extended to Defendant Harman without well-pleaded facts that are lacking here. Accordingly, the claims against Defendant Harman are dismissed and Plaintiff's Motion to Remand is **DENIED**.

### B. Motion to Dismiss

Defendants move to dismiss Plaintiffs' second, third, seventh, and eighth counts,[2] arguing: that Plaintiff's statutory bad faith claims are insufficiently pled; their common law bad faith claims are subsumed by their breach of contract claims; and that the claims against Individual Defendants fail to state a plausible cause of action as they were not principals or contractees with Plaintiffs and are not liable for the claims against them. Defendants also move to strike Plaintiffs' request for damages under Count VI beyond the limited scope permitted under 75 Pa.C.S. § 1797, to strike Plaintiffs' request for treble damages under 75 Pa.C.S. § 1797, to strike all allegations that Defendants breached a fiduciary duty owed to Plaintiffs, and to strike Plaintiffs' reliance on violations of the Unfair Insurance Practices Act ("UIPA") and Unfair Claims Settlement Practices Regulations ("UCSPR") to support their claims for bad faith pursuant to Rule 12(f).

Defendants' Motion to Dismiss is granted as to all claims against Defendants Timothy Harman and Patrick Eckles, and to Counts III and VIII related to violations of the UTPCPL committed by the Individual Defendants. Defendants' Motion is denied as to Counts II and VII for statutory bad faith claims against Defendant Mid-Century. Defendants' Motion to Strike is denied.

---

[2] (2) Common Law and Statutory Bad Faith relative to the September 9, 2015 Underinsured Motorist Claim pled against all Defendants; (3) Timothy Harman's Violation of Consumer Protection Law pled against all Defendants; (7) Common Law and Statutory Bad Faith relative to the First Party Medical Benefits Claims pled against Mid-Century Insurance Company; and (8) Patrick Eckles' Violation of Consumer Protection Law pled against all Defendants.

    i.    *Motion to Strike under FRCP 12(f).*

In Defendants' Motion to Strike, they argue that the damages, fiduciary duty, and reliance claims against them should be stricken from Plaintiffs' Complaint as insufficient and immaterial. "A demand for damages that is not recoverable as a matter of law may be stricken pursuant to Rule 12(f)." *Rivera v. Dealer Funding, LLC,* 178 F.Supp.3d 272, 281 (E.D.Pa. 2016) (citing *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F.Supp.2d 363, 383 (S.D.N.Y. 2004); *Shabaz v. Polo Ralph Lauren Corp.*, 586 F.Supp.2d 1205, 1208-09 (C.D.Cal. 2008). Courts may strike an insufficient defense or redundant, immaterial, impertinent, or scandalous matter from a pleading under Rule 12(f), but at this stage in the instant matter, the Court has not determined that Plaintiffs claims are not recoverable, and accordingly, the Motion to Strike is **DENIED**.

    ii.    *Statutory Bad Faith Claims.*

"Under Pennsylvania law, bad faith by an insurance company can give rise to two separate causes of action: a breach of contract action for violation of an insurance contract's implied duty of good faith, and a statutory action under the terms of Pennsylvania's bad faith statute, 42 Pa. Cons. Stat. § 8371." *Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 496-97 (3d Cir. 2015). To state a claim for statutory bad faith, Plaintiffs must allege facts that show: (1) Mid-Century did not have a reasonable basis for failing to provide UIM benefits under the policy; and (2) Mid-Century knew or recklessly disregarded its lack of a reasonable basis when it failed to provide UIM benefits under the policy. *Rancosky v. Washington Natl. Ins., Co.*, 170 A.3d 364, 376- 77 (Pa. 2017.) The Pennsylvania bad faith statute allows a court to award interest, punitive damages, and attorneys' fees if it "finds that the insurer has acted in bad faith toward the insured." 42 Pa. Con. Stat. §8371.

To withstand dismissal, Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to 'state a [bad faith claim] that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

11

U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570).  Defendants Mid-Century and Patrick Eckles conducted seven Peer Reviews with respect to Kevin Holohan's treatment in order to challenge causation and deny benefits, Pl. Compl. 19, which is at odds with the intended use of the procedure and can factually support a claim of bad faith.  Plaintiffs' bad faith claims survive summary judgment because Defendants administratively closed Plaintiff's first-collision-benefits-claim, despite acknowledging and having medical support that his initial injuries were exacerbated by the second collision, and then denied benefits under Plaintiffs' second-collision-benefits-claim.  Defendants' Motion to Dismiss is denied as to Plaintiffs' statutory bad faith claims.

  iii. *Common Law Bad Faith Claims*

With respect to a breach of contract action, Pennsylvania courts have held that "the common law duty of good faith and fair dealing is implied in every contract." *Tubman*, 943 F. Supp. 2d at 529 (citing *Excelsior Ins. Co. v. Incredibly Edible Delites*, No. CIV.A. 09-3198, 2009 WL 5092613, at *3 (E.D. Pa. Dec. 17, 2009)). Accordingly, Plaintiffs' common law bad faith claims are subsumed within their breach of contract claims, and the common law bad faith claims are dismissed.

  iv. *Plaintiffs' Claims Against the Individual Defendants Fail.*

  In addition to the three causes of action against Defendant Harman, Plaintiffs have pled three causes of action against Defendant Eckles: Count II - Common Law and Statutory Bad Faith; Count III - Violation of Consumer Protection Law; and Count VIII - Violation of Consumer Protection Law.  For the reasons discussed at length in Section II.A., Plaintiffs' individual claims against Defendants Eckles and Harman are dismissed. Both Eckles and Harman worked as claims adjusters for Mid-Century and followed the company's policies and

practices. Plaintiffs fail to plead sufficient facts to allege personal misconduct that established reliance between themselves and the Individual Defendants, despite the lack of a contractual relationship between Plaintiffs and the Individual Defendants, and accordingly, those claims must fail. Plaintiff's Count II is dismissed with prejudice as to Timothy Harman and Patrick Eckles. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (listing futility as a reason for denying leave to amend). Plaintiff's Counts III and VIII are dismissed without prejudice in their entirety as they rely on claims against the Individual Defendants.

## IV. CONCLUSION

Given the "fraudulent joinder" of Defendant Timothy Harman, Plaintiffs' Motion to Remand is **DENIED**.

Given that Plaintiffs present insufficient evidence of bad faith or violations of the UTPCPL to meet the clear and convincing evidence standard against the Individual Defendants, but present sufficient evidence to support claims against Defendant Mid-Century Insurance Co., Defendant's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Counts III and VIII related to violations of the UTPCPL are **DISMISSED WITHOUT PREJUDICE**. All counts are **DISMISSED WITH PREJUDICE** as to Defendants Timothy Harman and Patrick Eckles. Counts II and VII related to bad faith remain as to Defendant Mid-Century. Defendants' Motion to Strike is **DENIED**.

An appropriate order follows.